## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JASON AUSTIN, ANTWAN BELCHER, JEFFREY FINLEY, and MICHELLE RILEY | ) ) ) ) | FILED: SEP 22,2008 08CV5411 |
| Plaintiff, | ) ) ) | JUDGE GRADY MAGISTRATE JUDGE MASON |
| vs. | ) ) | RCC |
| CITY OF CHICAGO, ILLINOIS, and CHICAGO POLICE DETECTIVES PATRICK DEENIHAN, GREGORY JACOBSON, Star No. 12734, MICHAEL KELLY, MICHAEL CORLETT, UNKNOWN CHICAGO POLICE DETECTIVES, AND UNKNOWN CHICAGO POLICE OFFICERS | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

## <u>COMPLAINT</u>

Now come Plaintiffs, JASON AUSTIN, ANTWAN BELCHER, JEFFREY FINLEY, and MICHELLE RILEY ("Plaintiffs"), by and through their attorney, Jeffrey B. Granich, and make the following complaint against Defendant CITY OF CHICAGO, ILLINOIS, ("Defendant City"), Defendant CHICAGO POLICE DETECTIVES PATRICK DEENIHAN, GREGORY JACOBSON, Star No. 12734, MICHAEL KELLY, MICHAEL CORLETT, UNKNOWN CHICAGO POLICE DETECTIVES, ("Defendant Detectives"), and UNKNOWN CHICAGO POLICE OFFICERS ("Defendant Officers"):

## JURISDICTION and VENUE

1. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution.

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

3. Venue is proper under 28 U.S.C. § 1391(b). All parties reside in this judicial district and the events giving rise to the claims asserted in this complaint occurred within this district.

## PARTIES

4. At all times relevant hereto, Plaintiff Jason Austin was a 26 year-old, African-American male resident of Chicago, Illinois.

5. At all times relevant hereto, Plaintiff Antwan Belcher was a 30 year-old, African-American male resident of Chicago, Illinois.

6. At all times relevant hereto, Plaintiff Jeffrey Finley was a 23 year-old, African-American male resident of Chicago, Illinois.

7. At all times relevant hereto, Plaintiff Michelle Riley was a 24 year-old, African-American female resident of Chicago, Illinois.

8. At all times relevant hereto, Defendant Detectives, Unknown Defendant Detectives, and Unknown Police Officers were Police Officers for the City of Chicago and were acting under the color of the law and within the scope of their employment.

9. Defendant City of Chicago is a municipal corporation, duly incorporated under the laws of the State of Illinois, and is the employer and principal of the Defendant Officers.

## FACTUAL ALLEGATIONS

10. On August 13, 2008 at 1:30am, Chicago Police Officer Robert Soto and Kathryn Romberg were shot and killed while sitting in Soto's SUV outside Ms. Romberg's home in the 3000 block of West Franklin Boulevard Chicago, Illinois.

11. The Chicago Police Department immediately began an investigation into these murders. The police had received information from Officer Soto prior to his

death that there were three assailants and a maroon car had fled west after the shooting.

12. On August 14, 2008 in the late afternoon Plaintiff Michelle Riley was stopped by three Defendant Unknown Chicago Police Officers in the vicinity of Kedzie and Ohio and forced to accompany the Officers to Area 4 Chicago Police Station located at Harrison and Kedzie.

13. Plaintiff Riley was questioned for several hours regarding the homicide of Soto and Romberg and subsequently released.

14. Later in the evening on August 14, 2008 Plaintiff Riley was a passenger in a vehicle when she was again detained by Defendant Unknown Chicago Police Officer. At this time Plaintiff Riley was handcuffed and strip searched on the street by two Defendant Unknown Chicago Police Officers. Plaintiff Riley was subsequently released.

15. On August 15, 2008 in the early evening hours, Plaintiff Riley was contacted by Defendant Detective Kelly. Plaintiff Riley was told to return to Area 4 Police Station for further questioning regarding the homicide of Soto and Romberg.

16. Plaintiff Riley, accompanied by her mother, arrived at Area 4 Police Station at approximately 7:00pm on August 15, 2008. Plaintiff Riley was immediately placed in a locked interrogation room.

17. For the next several hours Plaintiff Riley was interrogated regarding the murders of Soto and Romberg. Defendant Detective Corlett as well as a Defendant Unknown male white Detective demanded that Plaintiff Riley implicate Plaintiff Jason Austin. Specifically, Defendant Detectives required that Plaintiff Riley tell them that she had seen Plaintiff Austin driving in a maroon Buick shortly after the shooting on August 13, 2008.

18. Plaintiff Riley repeatedly informed the officers that she had in fact not seen Plaintiff Austin driving in a maroon Buick on the night of the shootings.

19. Defendant Detectives began to scream obscenities at Plaintiff Riley while verbally threatening her with physical coercion as well as criminal prosecution if she refused to testify falsely against Plaintiff Austin. Plaintiff Riley again refused to falsely implicate Plaintiff Austin, and the Defendant Detectives left the interview room.

20. Shortly thereafter, Defendant Detective Corlett as well as the Defendant Unknown white male Detective returned to the interview room and informed Plaintiff Riley that her mother had left the station and could no longer protect her.

21.    The Defendant Detectives demanded that Plaintiff Riley tell them "What they wanted to hear".  Plaintiff Riley again refused to testify falsely.

22.    Defendant Detective Corlett and the Defendant Unknown male white Detective then placed Plaintiff Riley's hands behind her back and handcuffed her hands to a steel ring imbedded in the wall of the interview room.

23.    The Defendant Unknown white male Detective then slapped Plaintiff Riley with full force across her face demanding that she implicate Plaintiff Austin.

24.    Defendant Detective Corlett then kicked Plaintiff Riley's legs out from underneath her causing her to fall to the floor and hang painfully from her hands that were chained to the wall.  Defendant Detective Corlett repeatedly kicked her legs out from underneath her over an extended period of time demanding that she implicate Plaintiff Austin.

25.    Defendant Detective Corlett and the Defendant Unknown white male Detective continued to physically assault Plaintiff Riley until she agreed to their demands to falsely implicate Plaintiff Austin in the murders of Soto and Romberg.

26.    Defendant Detectives contacted the felony review unit of the Cook County State's Attorney's Office in order to memorialize the false statement they had physically coerced from Plaintiff Riley.

27.    Plaintiff Riley ultimately was forced to sign a false statement against Plaintiff Austin implicating him in the murders of Soto and Romberg.

28.    Once Plaintiff Riley had completed memorializing her false statement, she was released from Area 4 Police Station at 3:00pm on August 16, 2008.

29.    Plaintiff Riley was in fact not a witness to the murders of Soto and Romberg nor had she ever committed any criminal act.  Nonetheless, Plaintiff Riley was held against her will in Area 4 Police Station for over 20 hours.

30.    On August 14, 2008 Plaintiff Antwan Belcher was at his residence located at 3114 West Franklin Boulevard, Chicago, Illinois.  In the early afternoon hours of August 14, 2008 Defendant Detective Deenihan along with Defendant Unknown male white Detective arrived at Plaintiff Belcher's residence and informed him that he was required to accompany them to Area 4 Police Station regarding the investigation into the murders of Soto and Romberg.

31.    Plaintiff Belcher was taken to Area 4 Police Station and placed in a locked interview room.  Plaintiff Belcher was interrogated by Defendant Detective Deenihan and Defendant Unknown white male Police Detective.  Plaintiff

Belcher denied any knowledge as to the murders and was subsequently released two hours later.

32.     In the early afternoon hours of August 15, 2008 Defendant Detective Deenihan along with Defendant Unknown white male Detective returned to Plaintiff Belcher's residence and again demanded that he accompany them to Area 4 Police Station.

33.     Plaintiff Belcher was taken to Area 4 Police Station and was placed in a locked interview room. Defendant Detective Deenihan along with Defendant Detective Jacobson began to interrogate Plaintiff Belcher regarding the murders of Soto and Romberg. Specifically the Defendant Detectives demanded that Plaintiff Belcher implicate Plaintiff Austin in these murders as the driver of a maroon Buick.

34.     Plaintiff Belcher refused to falsely implicate Plaintiff Austin. In fact, Plaintiff Belcher repeatedly told the Defendant Detectives that Plaintiff Austin was not driving a maroon vehicle that evening, but rather a grey/green minivan.

35.     Defendant Detectives then proceeded to scream obscenities at Plaintiff Belcher and demanded that he implicate Plaintiff Austin as the driver of a maroon vehicle on the night of the shooting.

36.     When Plaintiff Belcher refused to falsely implicate Plaintiff Austin, the Defendant Detectives told Plaintiff Belcher to remove his jewelry and then proceeded to handcuff Plaintiff Belcher to a steel ring imbedded in the wall of the interview room.

37.     While Plaintiff Belcher was chained to the wall, the Defendant Detectives beat him roughly about the head and body. Defendant Detective Jacobson grabbed Plaintiff Belcher by the throat and proceeded to choke him while demanding that he falsely implicate Plaintiff Austin.

38.     After several hours of repeated physical assault, Plaintiff Belcher agreed to falsely implicate Plaintiff Austin.

39.     Defendant Detectives contacted the felony review unit of the Cook County State's Attorney's Office in order to memorialize the false statement they had physically coerced from Plaintiff Belcher.

40.     Plaintiff Belcher ultimately was forced to sign a false statement against Plaintiff Austin implicating him in the murders of Soto and Romberg.

41.     Plaintiff Belcher was in fact not a witness to the murders of Soto and Romberg nor had he ever committed any criminal act. Nonetheless, Plaintiff Belcher was held against his will in Area 4 Police Station for over 31 hours.

42.     While at Area 4 Police Station Plaintiff Belcher witnessed Defendant Detectives physically assault Plaintiff Riley while she was in an interview room adjacent to his own.

43.     In the early morning hours of August 15, 2008, Plaintiff Jeffrey Finley was approaching his sister's home located at 520 North Kedzie, when Defendant Unknown Detectives seized Plaintiff Finley, and placed him in handcuffs.

44.     Plaintiff Finley was transported to Area 4 Police Station where he was taken to a Police locker room. Once inside the locker room, Defendant Unknown Detectives placed him face down on a bench located in the locker room and handcuffed his hands with two sets of handcuffs underneath the bench.

45.     Plaintiff Finley was immediately punched in the head by Defendant Unknown male white Detective and thereafter kicked in his shoulder and knocked to the floor while still shackled to the bench.

46.     The Defendant Unknown Detectives began to interrogate Plaintiff Finley regarding the murders of Soto and Romberg. Plaintiff Finley repeatedly told the officers that he was with his brother, Terrance Scott on the night of the shootings and that they had not witnessed the murders of Soto and Romberg.

47.     The Defendant Unknown Detectives demanded that Plaintiff Finley falsely implicate Plaintiff Austin. Specifically, the Defendant Detectives wanted Plaintiff Finley to state that his brother, Terrance Scott, was not with him on the night of the shooting, but rather in Plaintiff Austin's maroon Buick during the shooting.

48.     Plaintiff Finley repeatedly refused to falsely implicate his brother or Plaintiff Austin in the murders of Soto and Romberg.

49.     One of the Defendant Unknown Detectives ordered Plaintiff Finley to ball up his fists. The Defendant Unknown Detective then proceeded to step on Plaintiff Finley's fists while he was chained to the bench in the police locker room.

50.     Thereafter, four Defendant Unknown Police Detectives entered the locker room and moved Plaintiff Finley to a different bench in the locker room. The four Defendant Unknown Police Officers then proceeded to physically assault Plaintiff Finley. Specifically one of the Defendant Unknown Officers repeatedly slammed Plaintiff Finley's head against a Police locker while screaming, "Do you know whose locker this is?"

51.     Plaintiff Finley was repeatedly physically assaulted by these Defendant Police Officers including but not limited to; beaten with fists, kicked, and threatened

6

with deadly force. The Defendant Unknown Police Officers continued to demand that Plaintiff Finley falsely implicate his brother and Plaintiff Austin in the murders of Soto and Romberg.

52.     Despite the above described physical and verbal assaults, Plaintiff Finley refused to falsely implicate his brother or Plaintiff Austin in the murders of Soto and Romberg.

53.     While at Area 4 Police Station Plaintiff Finley informed a Defendant Unknown male Cook County State's Attorney that he was repeatedly physically assaulted by Unknown Chicago Police Officers during his interrogation.

54.     Plaintiff Finley was ultimately released from Area 4 Police Station at 11:30pm on August 15, 2008.

55.     Plaintiff Finley was in fact not a witness to the murders of Soto and Romberg nor had he ever committed any criminal act. Nonetheless, Plaintiff Finley was held against his will in Area 4 Police Station for over 15 hours.

56.     In the early morning hours of August 16, 2008, Plaintiff Jason Austin was sleeping in his residence located at 548 North LeClaire, Chicago, Illinois.

57.     At this time, Plaintiff Austin was awoken by Defendant Unknown Police Officers with their guns drawn pointing at his head.

58.     Plaintiff Austin was seized, one of his arms roughly twisted behind his back, and immediately handcuffed in a tight and overly restrictive manner.

59.     Plaintiff Austin was never shown a warrant for his arrest or a search warrant for his residence.

60.     Plaintiff Austin was taken to Area 4 Police Station where he was placed in a locked interview room. When Plaintiff Austin was informed of the circumstances surrounding his arrest, he repeatedly told the officers that he could not have been driving his maroon Buick on the night of the shooting, due to the fact that his car had been taken in for repairs prior to the night of the shooting and was still located in the mechanic's garage the following day. Plaintiff Austin provided the Defendants with the name of his mechanic as well as the location of the mechanic's garage.

61.     Despite being provided with an alibi and the factual impossibility of Defendant Austin driving his maroon Buick on the night of the shooting as well as the knowledge that the statements of Plaintiff Riley and Belcher were false and physically coerced, the Defendant Detectives and Defendant

Unknown Police Officers caused Plaintiff Austin to be charged with the First
Degree Murder of Police Officer Soto and Kathryn Romberg.

62. Thereafter, Plaintiff Austin was taken to Cook County Court House located at
26th and California for a Bond Hearing.

63. Based on the nature and circumstances of the charges against him, as well as
the declared intent by the Cook County State's Attorney's Office to seek the
death penalty against him, Plaintiff Austin was denied bond.

64. On September 10, 2008, after verifying the factual impossibility that Plaintiff
Austin had used his maroon Buick in the shooting of Soto and Romberg, the
Cook County State's Attorney's Office dismissed all charges against Plaintiff
Austin.

65. Plaintiff Austin was in continuous custody at the Cook County Jail from
August 16, 2008 until September 10, 2008 when these false charges were
dismissed by the Cook County State's Attorney's Office.

## Count I – 42 U.S.C. § 1983 False Arrest

66. Plaintiffs re-alleged paragraphs 1 through 65 as if fully repleaded herein.

67. On August 14 and August 15, 2008, Plaintiff Riley was seized and arrested
without a warrant and without probable cause and without a good faith basis
to believe that Plaintiff Riley was a material witness. These seizures and
arrests were in violation of Plaintiff's rights secured under the Fourth and
Fourteenth Amendments of the Constitution of the United States.

68. On August 15, 2008 Plaintiff Belcher was seized and arrested without a
warrant and without probable cause and without a good faith basis to believe
that Plaintiff Belcher was a material witness. This seizure and arrest was in
violation of Plaintiff's rights secured under the Fourth and Fourteenth
Amendments of the Constitution of the United States.

69. On August 15, 2008 Plaintiff Finley was seized and arrested without a warrant
and without probable cause and without a good faith basis to believe that
Plaintiff Finley was a material witness. This seizure and arrest was in
violation of Plaintiff's rights secured under the Fourth and Fourteenth
Amendments of the Constitution of the United States.

70. On August 16, 2008 Plaintiff Austin was seized and arrested without a
warrant and without probable cause. This seizure and arrest was in violation
of Plaintiff's rights secured under the Fourth and Fourteenth Amendments of
the Constitution of the United States.

71.    Defendant Officers unlawfully and maliciously arrested Plaintiffs Riley, Belcher, Finley, and Austin and wrongfully detained and searched them without any legal right to do so, in their official capacity as law enforcement officers, under color of state law, and acting within the scope of their employment.

72.    The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

    a.    As a matter of both policy and practice, the Chicago Police Department directly encourages the type of misconduct at issue here by failing to adequately train, supervise and control its officers, and its failure to do so constitutes deliberate indifference;

    b.    As a matter of both policy and practice, the Chicago Police Department facilitates the type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encourages future abuses such as those affecting Plaintiff; specifically, Chicago Police officers accused of misconduct are aware that the Office of Professional Standards will not fully investigate these accusations and will almost always refuse to recommend discipline even where the officer has engaged in wrongdoing;

    c.    As a matter of widespread practice so prevalent as to comprise municipal policy, Officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

    d.    Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which Officers fail to report misconduct committed by other Officers, such as the misconduct at issue in this case;

    e.    The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

f.    As a matter of express policy, the City of Chicago does not retain any records which are more than five years old documenting allegations of misconduct against police officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a Police Officer's career;

g.    As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. Regardless, the number of times an Officer is accused of the same misconduct, the Office of Professional Standards is forbidden by the City from considering those allegations if they are deemed "unsustained"; and,

h.    The problem with the policy identified in the preceding paragraph is that by its own accounting, the City sustains less than 5% of the complaints brought against Police Officers for violations of civil rights.

73.    The acts committed by Defendant Officers were done maliciously, willfully and wantonly, intentionally, and with reasonable certainty that the acts were in violation of Plaintiffs' constitutional rights and would cause harm to Plaintiffs.

74.    As a direct and proximate result of the unjustified and excessive use of force, as well as Defendant City's policy and practice, Plaintiffs suffered severe injuries, as well as severe pain and suffering, and emotional distress.

WHEREFORE, Plaintiffs Riley, Belcher, Finley, and Austin pray for judgment against Defendant Officers and Defendant City in a fair and just amount sufficient to compensate them for their injuries they suffered and continues to suffer, plus, Plaintiffs seek a substantial sum in punitive damages against the individual Defendants, costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

## Count II – 42 U.S.C. § 1983 – Excessive Force

75.    Plaintiffs re-allege paragraphs 1 through 65 as if fully repleaded herein.

76.    On August 15 and August 16, 2008, Defendant Officers subjected Plaintiffs Riley, Belcher, Finley, and Austin to excessive force.

77.     The misconduct as described in the preceding paragraphs was objectively unreasonable and was undertaken intentionally, maliciously, willfully and with reckless indifference to Plaintiffs' constitutional rights.

78.     The misconduct described in this count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

    a.    As a matter of both policy and practice, the Chicago Police Department directly encourages the type of misconduct at issue here by failing to adequately train, supervise and control its officers, and its failure to do so constitutes deliberate indifference;

    b.    As a matter of both policy and practice, the Chicago Police Department facilitates the type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encourages future abuses such as those affecting Plaintiff; specifically, Chicago Police officers accused of misconduct are aware that the Office of Professional Standards will not fully investigate these accusations and will almost always refuse to recommend discipline even where the officer has engaged in wrongdoing;

    c.    As a matter of widespread practice so prevalent as to comprise municipal policy, Officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

    d.    Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which Officers fail to report misconduct committed by other Officers, such as the misconduct at issue in this case;

    e.    The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

    f.    As a matter of express policy, the City of Chicago does not retain any records which are more than five years old documenting allegations of misconduct against police officers, thereby

preventing the City from ascertaining any patterns of abuse which might develop over the course of a Police Officer's career;

g.  As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. Regardless, the number of times an Officer is accused of the same misconduct, the Office of Professional Standards is forbidden by the City from considering those allegations if they are deemed "unsustained"; and,

h.  The problem with the policy identified in the preceding paragraph is that by its own accounting, the City sustains less than 5% of the complaints brought against Police Officers for violations of civil rights.

79.  As a direct and proximate result of the unjustified and excessive use of force, as well as Defendant City's policy and practice, Plaintiffs suffered severe injuries, as well as severe pain and suffering, and emotional distress.

WHEREFORE, Plaintiffs pray for judgment against Defendant Officers and Defendant City in a fair and just amount sufficient to compensate them for their injuries they suffered and continue to suffer, plus, Plaintiffs seek a substantial sum in punitive damages against the individual Defendants, costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.


**<u>Count III – 42 U.S.C. § 1983 – Failure to Intervene</u>**

80.  Plaintiffs re-allege paragraphs 1 through 65 as if fully repleaded herein.

81.  During the constitutional violations as described above, one or more of the Defendant Officers stood by without intervening to prevent the misconduct.

82.  The misconduct described in the preceding paragraphs was objectively unreasonable and was undertaken intentionally, with willful indifference to Plaintiffs' constitutional rights.

83.  The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

a.  As a matter of both policy and practice, the Chicago Police Department directly encourages the type of misconduct at issue here by failing to adequately train, supervise and control its officers, and its failure to do so constitutes deliberate indifference;

b.   As a matter of both policy and practice, the Chicago Police Department facilitates the type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encourages future abuses such as those affecting Plaintiff; specifically, Chicago Police officers accused of misconduct are aware that the Office of Professional Standards will not fully investigate these accusations and will almost always refuse to recommend discipline even where the officer has engaged in wrongdoing;

c.   As a matter of widespread practice so prevalent as to comprise municipal policy, Officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

d.   Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which Officers fail to report misconduct committed by other Officers, such as the misconduct at issue in this case;

e.   The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

f.   As a matter of express policy, the City of Chicago does not retain any records which are more than five years old documenting allegations of misconduct against police officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a Police Officer's career;

g.   As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. Regardless, the number of times an Officer is accused of the same misconduct, the Office of Professional Standards is forbidden by the City from considering those allegations if they are deemed "unsustained"; and,

h.    The problem with the policy identified in the preceding paragraph is that by its own accounting, the City sustains less than 5% of the complaints brought against Police Officers for violations of civil rights.

84.    As a direct and proximate result of this failure to intervene to prevent the violation of Plaintiffs' constitutional rights, Plaintiffs suffered pain and injury, as well as emotional distress.  These Officers had a reasonable opportunity to prevent this harm, but failed to do so.

WHEREFORE, Plaintiffs pray for judgment against Defendant Officers and Defendant City in a fair and just amount sufficient to compensate them for their injuries they suffered and continues to suffer, plus, Plaintiffs seek a substantial sum in punitive damages against the individual Defendants, costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.


**Count IV – 42 U.S.C. § 1983 Conspiracy**

85.    Plaintiffs re-allege paragraph 1 through 65 as if fully repleaded herein.

86.    Defendant Officers and Defendant City reached an understanding, engaged in a sequence of events or course of conduct and otherwise agreed and conspired together to violate the constitutional rights of the Plaintiffs.

87.    Each Defendant did reach this understanding and agreement and did engage in this course of conduct with the mutual purpose, objective and knowledge that it would deprive Plaintiffs of their rights of due process, as guaranteed by the Constitution.

88.    Additionally, said conspiracy and joint action violated the Plaintiffs' 14th Amendment rights, under color of law, in contravention of 42 U.S.C. § 1983.

89.    Acting in furtherance of this plan and conspiracy, Defendants did commit overt acts, including the illegal seizure, detention, assault, and search of Plaintiffs on August 14, 15, and 16, 2008, as more fully alleged in the preceding paragraphs.

90.    The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

a.    As a matter of both policy and practice, the Chicago Police Department directly encourages the type of misconduct at issue here by failing to adequately train, supervise and control its officers, and its failure to do so constitutes deliberate indifference;

14

b.     As a matter of both policy and practice, the Chicago Police Department facilitates the type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encourages future abuses such as those affecting Plaintiff; specifically, Chicago Police officers accused of misconduct are aware that the Office of Professional Standards will not fully investigate these accusations and will almost always refuse to recommend discipline even where the officer has engaged in wrongdoing;

c.     As a matter of widespread practice so prevalent as to comprise municipal policy, Officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

d.     Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which Officers fail to report misconduct committed by other Officers, such as the misconduct at issue in this case;

e.     The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

f.     As a matter of express policy, the City of Chicago does not retain any records which are more than five years old documenting allegations of misconduct against police officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a Police Officer's career;

g.     As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. Regardless, the number of times an Officer is accused of the same misconduct, the Office of Professional Standards is forbidden by the City from considering those allegations if they are deemed "unsustained"; and,

      h.     The problem with the policy identified in the preceding paragraph is that by its own accounting, the City sustains less than 5% of the complaints brought against Police Officers for violations of civil rights.

91.     This course of conduct by Defendants described in this count was done willfully, maliciously, intentionally, or with reckless disregard and gross negligence, and directly and proximately caused injury and harm to the Plaintiffs.

    WHEREFORE, Plaintiffs pray for judgment against Defendant Officers and Defendant City in a fair and just amount sufficient to compensate them for their injuries they suffered and continues to suffer, plus, Plaintiffs seek a substantial sum in punitive damages against the individual Defendants, costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

## Count V – False Imprisonment

92.     Plaintiffs re-allege paragraphs 1 through 65 as if fully repleaded herein.

93.     Jurisdiction of this court is invoked pursuant to its supplemental jurisdiction under title 28, United States Code §1367.

94.     On August 14 and August 15, 2008, Plaintiff Riley was seized and arrested without a warrant and without probable cause and without a good faith basis to believe that Plaintiff Riley was a material witness. These seizures and arrests were in violation of Plaintiff's rights secured under the Fourth and Fourteenth Amendments of the Constitution of the United States.

95.     On August 15, 2008 Plaintiff Belcher was seized and arrested without a warrant and without probable cause and without a good faith basis to believe that Plaintiff Belcher was a material witness. This seizure and arrest was in violation of Plaintiff's rights secured under the Fourth and Fourteenth Amendments of the Constitution of the United States.

96.     On August 15, 2008 Plaintiff Finley was seized and arrested without a warrant and without probable cause and without a good faith basis to believe that Plaintiff Finley was a material witness. This seizure and arrest was in violation of Plaintiff's rights secured under the Fourth and Fourteenth Amendments of the Constitution of the United States.

97.     On August 16, 2008 Plaintiff Austin was seized and arrested without a warrant and without probable cause. This seizure and arrest was in violation of Plaintiff's rights secured under the Fourth and Fourteenth Amendments of the Constitution of the United States.

98.     Defendant Officers and Defendant City unlawfully seized, detained, and wrongfully searched Plaintiffs without any legal right to do so.

99.     The acts committed by Defendant Officers and Defendant City were done maliciously, willfully and wantonly, intentionally, and with reasonable certainty that the acts were in violation of Plaintiffs' Constitutional rights and would cause harm to Plaintiffs.

100.    As a direct and proximate result of the unjustified seizure, as well as Defendant City's policy and practice, Plaintiffs suffered severe injuries, as well as severe pain and suffering, and emotional distress.

     WHEREFORE, Plaintiffs pray for judgment against the individual Defendant Officers and Defendant City in a fair and just amount sufficient to compensate them for their injuries they suffered, plus, Plaintiffs seek costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

### Count VI – Battery

101.    Plaintiffs re-allege paragraphs 1 through 65 as if fully repleaded herein.

102.    Jurisdiction of this court is invoked pursuant to its supplemental jurisdiction under title 28, United States Code §1367.

103.    Defendant Officers maliciously, willfully, wantonly, and without lawful justification or authority caused physical injuries to Plaintiffs. Additionally, these Defendant Officers knew with reasonable certainty that their actions would cause Plaintiffs physical harm.

104.    Defendant Officers were acting as employees of Defendant City of Chicago and within the scope of their employment when they physically assaulted Plaintiffs on August 15 and August 16, 2008.  Plaintiffs suffered severe injuries as a result of said intentional battery.

     WHEREFORE, Plaintiffs pray for judgment against the Defendant Officers  and Defendant City in a fair and just amount sufficient to compensate them for their injuries they suffered and continues to suffer, plus, Plaintiffs seeks costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

### Count VII – Intentional Infliction of Emotional Distress

105.    Plaintiffs re-allege paragraphs 1 through 65 as if fully repleaded herein.

106. Jurisdiction of this court is invoked pursuant to its supplemental jurisdiction under title 28, United States Code §1367.

107. Defendant Officers' illegal arrests, excessive force, battery, and unlawful seizure of Plaintiffs were committed with intentional disregard for Plaintiffs' innocence, and amount to extreme and outrageous conduct against Plaintiffs.

108. Defendants intended to inflict severe emotional distress upon Plaintiffs and knew that there was a high probability that their conduct would cause them severe emotional distress and mental anguish.

109. As a direct and proximate result of this illegal and malicious conduct, Plaintiffs suffered extensive damages, including but not limited to sever physical and emotional harm, legal and other out-of-pocket costs and other damages which will be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendant Officers and Defendant City in a fair and just amount sufficient to compensate them for their injuries they suffered and continue to suffer, plus, Plaintiffs seeks costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

## Count VIII—Malicious Prosecution of Plaintiff Austin

110. Plaintiff Austin re-alleges paragraphs 1 through 65 as if fully repleaded herein.

111. Jurisdiction of this court is invoked pursuant to its supplemental jurisdiction under title 28, United States Code §1367.

112. Defendant Officers initiated and continued judicial proceedings against Plaintiff by intentionally making knowingly false statements in police reports and causing false testimony to be presented to a Cook County Judge. This false and malicious conduct resulted in Plaintiff being charged with and prosecuted for a battery.

113. Defendant Officers instituted the judicial proceedings against Plaintiff with malice and with willful and wanton disregard for the truth.

114. Defendant Officers brought said false charges and continued the prosecution of such false charges in order to cover up their own illegal conduct.

115. On September 10, 2008, Plaintiff's case was dismissed.

116.    As a direct and proximate result of this illegal and malicious conduct, Plaintiff has suffered extensive damages, including but not limited to: severe emotional harm, legal and other out-of-pocket costs and other damages which will be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant Officers and Defendant City in a fair and just amount sufficient to compensate him for the injuries he suffered, plus, Plaintiff seeks costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

### Count IX—State Law Claims Against Defendant City
### *Respondeat Superior* and Indemnification

117.    Plaintiffs re-allege paragraphs 1 through 65 as if fully re-pleaded herein.

118.    Illinois law provides that public entities, such as Defendant City, are directed to pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

119.    At all relevant times, Defendant Officers were agents of Defendant City and employees of the Chicago Police Department acting within the scope of their employment.  Defendant City, therefore, is liable as principal for all torts committed by its agents, Defendant Officers.

WHEREFORE, Plaintiffs pray for judgment against Defendants in a fair and just amount sufficient to compensate them for their injuries they suffered, plus, Plaintiffs seek costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

Jason Austin, Antwan
Belcher, Jeffrey Finley, and
Michelle Riley,
Plaintiffs,

By:    /s/ Jeffrey B. Granich
        Jeffrey B. Granich
        Attorney for Plaintiff

JEFFREY B. GRANICH
Law Offices of Jeffrey B. Granich

19

53 W. Jackson Blvd.
Suite 840
Chicago, IL 60604
(312) 939-9009
A.R.D.C. No. 6207030