## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| MICHELLE RILEY, and ANTWAN BELCHER, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| | ) 08 CV 5411 |
| The CITY OF CHICAGO, ILLINOIS, a Municipal Corporation, and Chicago Police Officers PATRICK DEENIHAN (#20739), GREGORY JACOBSON, (#20031), MICHAEL KELLY (#21150), MICHAEL CORLETT (#21388), KEVIN BOR (20533), DANIEL GALLAGHER (#21123), PAUL MCDONAGH (#20225), M. KENNEDY (#20102), D. ROBERTS (#20764), G. SWIDEREK (#20130), SANDOVAL (#21302), DAVID GARCIA (#20429), HAMMOND (#21013), ROBERT GLIWA, JR. (#20526), PATRICK THELEN (#21247) and RUSSELL EGAN, | ) ) ) ) ) ) Judge Grady ) ) ) Magistrate Judge Mason ) ) ) ) ) ) ) ) |
| Defendants. | ) **JURY TRIAL DEMANDED** |

## THIRD AMENDED COMPLAINT

Plaintiffs, MICHELLE RILEY and ANTWAN BELCHER, ("Plaintiffs"), by and through one of their attorneys, Hamilton Law Office, LLC, make the following complaint against Defendant Chicago Police Detectives, PATRICK DEENIHAN, GREGORY JACOBSON, MICHAEL KELLY, MICHAEL CORLETT, KEVIN BOR, DANIEL GALLAGHER, PAUL MCDONAGH, M. KENNEDY, D. ROBERTS, G. SWIDEREK, SANDOVAL, DAVID GARCIA, HAMMOND, ROBERT GLIWA, JR., PATRICK THELEN and RUSSELL EGAN ("Defendant Detectives"):

## JURISDICTION and VENUE

1. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution.

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

3. Venue is proper under 28 U.S.C. § 1391(b). All parties reside in this judicial district and the events giving rise to the claims asserted in this complaint occurred within this district.

## PARTIES

4. At all times relevant hereto, Plaintiff Michelle Riley was a 24 year-old, African-American female resident of Chicago, Illinois.

5. At all times relevant hereto, Plaintiff Antwan Belcher was a 30 year-old, African-American male resident of Chicago, Illinois.

6. At all times relevant hereto, Defendant Detectives, were employed as Chicago police officers, employed by the City of Chicago, acting under the color of the law and within the scope of their employment with Defendant City.

7. Defendant City of Chicago is a municipal corporation, duly incorporated under the laws of the State of Illinois, and was at all relevant times, the employer and principal of the Defendant Detectives.

## FACTS

8. On August 13, 2008 at approximately 1:30 a.m., Chicago Police Officer Robert Soto and Kathryn Romber8g were shot and killed while sitting in Soto's vehicle outside Ms. Romberg's home in the 3000 block of West Franklin Boulevard Chicago, Illinois.

9. The Chicago Police Department immediately began an investigation into these murders. The police had received information from Officer Soto prior to his death that there were three assailants and a maroon car had fled west after the shooting.

10. On August 14, 2008 in the late afternoon Plaintiff Michelle Riley was stopped by three Defendant Unknown Chicago Police Officers in the vicinity of Kedzie and Ohio and forced to accompany the Officers to Area 4 Chicago Police Station located at Harrison and Kedzie.

11. Plaintiff Riley was questioned for several hours regarding the homicide of Soto and Romberg and subsequently released.

12. On August 15, 2008 in the early evening hours, Plaintiff Riley was contacted by Defendant Detective Kelly. Plaintiff Riley was told to return to Area 4 Police Station for further questioning regarding the homicide of Soto and Romberg.

13. Plaintiff Riley, accompanied by her mother, arrived at Area 4 Police Station at approximately 7:00 p.m. on August 15, 2008. Plaintiff Riley was immediately placed in a locked interrogation room.

14. For the next several hours Plaintiff Riley was interrogated regarding the murders of Soto and Romberg. Defendant Detective Corlett as well as a Defendant Unknown male white Detective demanded that Plaintiff Riley implicate Jason Austin. Specifically, Defendant Detectives required that Plaintiff Riley tell them that she had seen Austin driving in a maroon Buick shortly after the shooting on August 13, 2008.

15. Plaintiff Riley repeatedly informed the officers that she had in fact not seen Austin driving in a maroon Buick on the night of the shootings.

16. Defendant Detectives began to scream obscenities at Plaintiff Riley while verbally threatening her with physical coercion as well as criminal prosecution if she refused to testify falsely against Austin. Plaintiff Riley again refused to falsely implicate Austin, and the Defendant Detectives left the interview room.

3

17. Shortly thereafter, Defendant Detective Corlett as well as the Defendant Unknown white male Detective returned to the interview room and informed Plaintiff Riley that her mother had left the station and could no longer protect her.

18. The Defendant Detectives demanded that Plaintiff Riley tell them "What they wanted to hear". Plaintiff Riley again refused to testify falsely.

19. Defendant Detective Corlett and the Defendant Unknown male white Detective then placed Plaintiff Riley's hands behind her back and handcuffed her hands to a steel ring imbedded in the wall of the interview room.

20. The Defendant Unknown white male Detective then slapped Plaintiff Riley with full force across her face demanding that she implicate Austin.

21. Defendant Detective Corlett then kicked Plaintiff Riley's legs out from underneath her causing her to fall to the floor and hang painfully from her hands that were chained to the wall. Defendant Detective Corlett repeatedly kicked her legs out from underneath her over an extended period of time demanding that she implicate Austin.

22. Defendant Detective Corlett and the Defendant Unknown white male Detective continued to physically assault Plaintiff Riley until she agreed to their demands to falsely implicate Austin in the murders of Soto and Romberg.

23. Defendant Detectives contacted the felony review unit of the Cook County State's Attorney's Office in order to memorialize the false statement they had physically coerced from Plaintiff Riley.

24. Plaintiff Riley ultimately was forced to sign a false statement against Austin implicating him in the murders of Soto and Romberg.

25. Once Plaintiff Riley had completed memorializing her false statement, she was released from Area 4 Police Station at approximately 3:00 p.m. on August 16, 2008.

26. Plaintiff Riley was in fact not a witness to the murders of Soto and Romberg nor had she ever committed any criminal act. Nonetheless, Plaintiff Riley was held against her will in Area 4 Police Station for over 20 hours.

27. On August 14, 2008 Plaintiff Antwan Belcher was at his residence located at 3114 West Franklin Boulevard, Chicago, Illinois. In the early afternoon hours of August 14, 2008 Defendant Detective Deenihan along with Defendant Unknown male white Detective arrived at Plaintiff Belcher's residence and informed him that he was required to accompany them to Area 4 Police Station regarding the investigation into the murders of Soto and Romberg.

28. Plaintiff Belcher was taken to Area 4 Police Station and placed in a locked interview room. Plaintiff Belcher was interrogated by Defendant Detective Deenihan and Defendant Unknown white male Police Detective. Plaintiff Belcher denied any knowledge as to the murders and was subsequently released two hours later.

29. In the early afternoon hours of August 15, 2008 Defendant Detective Deenihan along with Defendant Unknown white male Detective returned to Plaintiff Belcher's residence and again demanded that he accompany them to Area 4 Police Station.

30. Plaintiff Belcher was taken to Area 4 Police Station and was placed in a locked interview room. Defendant Detective Deenihan along with Defendant Detective Jacobson began to interrogate Plaintiff Belcher regarding the murders of Soto and Romberg. Specifically the Defendant Detectives demanded that Plaintiff Belcher implicate Jason Austin in these murders as the driver of a maroon Buick.

31. Plaintiff Belcher refused to falsely implicate Austin. In fact, Plaintiff Belcher repeatedly told the Defendant Detectives that Austin was not driving a maroon vehicle that evening, but rather a grey/green minivan.

5

32. Defendant Detectives then proceeded to scream obscenities at Plaintiff Belcher and demanded that he implicate Austin as the driver of a maroon vehicle on the night of the shooting.

33. When Plaintiff Belcher refused to falsely implicate Austin, the Defendant Detectives told Plaintiff Belcher to remove his jewelry and then proceeded to handcuff Plaintiff Belcher to a steel ring imbedded in the wall of the interview room.

34. While Plaintiff Belcher was chained to the wall, the Defendant Detectives beat him roughly about the head and body. Defendant Detective Jacobson grabbed Plaintiff Belcher by the throat and proceeded to choke him while demanding that he falsely implicate Austin.

35. After several hours of repeated physical assault, Plaintiff Belcher agreed to falsely implicate Austin.

36. Defendant Detectives contacted the felony review unit of the Cook County State's Attorney's Office in order to memorialize the false statement they had physically coerced from Plaintiff Belcher.

37. Plaintiff Belcher was ultimately forced to sign a false statement against Austin implicating him in the murders of Soto and Romberg.

38. Plaintiff Belcher was in fact not a witness to the murders of Soto and Romberg nor had he ever committed any criminal act.  Nonetheless, Plaintiff Belcher was held against his will in Area 4 Police Station for more than 48 hours, during which time he was assaulted by Defendant Detectives.

39. While at Area 4 Police Station Plaintiff Belcher witnessed Defendant Detectives physically assault Plaintiff Riley while she was in an interview room adjacent to his own.

### Count I – 42 U.S.C. § 1983 Unlawful Search and Seizure

40. Plaintiffs re-allege the preceding paragraphs as if fully restated here.

6

41. As more fully described above, Defendant Detectives arrested and searched Plaintiffs without a warrant, probable cause, or any other legal justification to do so, in violation of Plaintiff's rights under the Fourth Amendment to the United States Constitution.

42. Also as more fully described above, Plaintiffs were held for an unreasonable amount of time and in unreasonable conditions of confinement, without legal justification, and without a judicial determination of probable cause, also in violation of the Fourth Amendment to the United States' Constitution.

43. As a direct and proximate result of this unlawful search and seizure, false Plaintiffs suffered damages, including physical and emotional damages, which will be proven at trial.

**WHEREFORE**, Plaintiff prays for judgment against Defendant Detectives in a fair and just amount sufficient to compensate Plaintiffs for the injuries they have suffered, plus a substantial sum in punitive damages, as well as costs, attorney's fees, and such other relief as is just and equitable.

### Count II – 42 U.S.C. § 1983 – Excessive Force

44. Plaintiffs re-allege the preceding paragraphs as if fully restated here.

45. As more fully described in the preceding paragraphs, the intentional conduct of Defendant Detectives toward Plaintiffs was objectively unreasonable under the circumstances, and thus constituted excessive force in violation of the Fourth Amendment to the United States Constitution.

46. As a direct and proximate result of Defendant Officer's use of excessive force, Plaintiff suffered physical and emotional damages which will be proven at trial.

**WHEREFORE**, Plaintiff prays for judgment against Defendant Detectives in a fair and just amount sufficient to compensate Plaintiffs for the injuries they have suffered, plus a substantial sum in punitive damages, as well as costs, attorney's fees, and such other relief as is just and equitable.

### Count III – 42 U.S.C. § 1983 – Failure to Intervene

47. Plaintiffs re-allege the preceding paragraphs as if fully restated here.

48. During the constitutional violations as described above, one or more of the Defendant Detectives were aware of the misconduct of their fellow Detectives, had a reasonable opportunity to intervene to prevent the harm suffered by the Plaintiffs, but failed to do so.

49. As a direct and proximate result of this failure to intervene to prevent the violation of Plaintiffs' constitutional rights, Plaintiffs suffered pain and injury, as well as emotional distress.

**WHEREFORE**, Plaintiff prays for judgment against Defendant Detectives in a fair and just amount sufficient to compensate Plaintiffs for the injuries they have suffered, plus a substantial sum in punitive damages, as well as costs, attorney's fees, and such other relief as is just and equitable.

### Count IV – 42 U.S.C. § 1983 Conspiracy

50. Plaintiffs re-allege the preceding paragraphs as if fully restated here.

51. Defendant Detectives expressly or impliedly agreed and conspired together to violate the constitutional rights of Plaintiffs, as described more fully above, in their efforts to solve the murder of a fellow police officer.

52. As a result of Defendants' conspiracy Plaintiffs suffered physical and emotional damages, which will be proven at trial.

**WHEREFORE**, Plaintiff prays for judgment against Defendant Detectives in a fair and just amount sufficient to compensate Plaintiffs for the injuries they have suffered, plus a substantial sum in punitive damages, as well as costs, attorney's fees, and such other relief as is just and equitable.

### Count V – Illinois False Imprisonment

53. Plaintiffs re-allege the preceding paragraphs as if fully restated here.

54. As more fully described above, Defendant Detectives unlawfully seized and detained Plaintiffs without a warrant, probable cause, or any other legal justification to do so.

55. Defendant Detectives acted willfully and wantonly in that they intended to violate, or were recklessly indifferent towards violating, Plaintiffs' rights.

56. As a direct and proximate result of Defendant Detectives' misconduct, Plaintiffs suffered physical and emotional damages, which will be proven at trial.

57. Illinois law provides that public entities, such as Defendant City, are directed to pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

58. At all relevant times, Defendant Detectives were agents of Defendant City, and acting within the scope of his employment as a Chicago Police Officers.  Defendant City, therefore, is liable as principal for the torts they committed against Plaintiffs.

**WHEREFORE**, Plaintiff prays for judgment against Defendants in a fair and just amount sufficient to compensate Plaintiffs for the injuries they have suffered, as well as such other relief as is just and equitable.

## Count VI – Illinois Battery

59. Plaintiffs re-allege the preceding paragraphs as if fully restated here.

60. As more fully described above, Defendant Detectives willfully and wantonly and without legal justification, used physical force upon Plaintiff without his or her consent.

61. As a direct and proximate result of this intentional misconduct, Plaintiffs suffered physical and emotional harm.

62. Illinois law provides that public entities, such as Defendant City, are directed to pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

63. At all relevant times, Defendant Detectives were agents of Defendant City, and acting within the scope of his employment as a Chicago Police Officers.  Defendant City, therefore, is liable as principal for the torts Defendant Detectives committed against Plaintiffs.

WHEREFORE, Plaintiff prays for judgment against Defendant Detectives and Defendant City in a fair and just amount sufficient to compensate Plaintiffs for the injuries he or she has suffered, as well as such other relief as is just and equitable.

## Count VII – Illinois Intentional Infliction of Emotional Distress

64. Plaintiffs re-allege the preceding paragraphs as if fully restated here.

65. As more fully described above, Defendant Detectives' conduct towards Plaintiffs was extreme and outrageous.

66. Defendant Detectives acted willfully and wantonly in that they intended, or were recklessly indifferent towards, causing Plaintiffs severe emotional distress, knowing that there was a high probability that their conduct would cause Plaintiffs severe emotional distress and mental anguish.

67. As a direct and proximate result of Defendant Officers' misconduct, Plaintiffs, in fact, suffered severe emotional distress.

68. Illinois law provides that public entities, such as Defendant City, are directed to pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

69. At all relevant times, Defendant Officers were agents of Defendant City and employees of the Chicago Police Department acting within the scope of their employment. Defendant City, therefore, is liable as principal for all torts committed by its agents, Defendant Officers.

WHEREFORE, Plaintiffs pray for judgment against Defendants in a fair and just amount sufficient to compensate them for the injuries they have suffered, and all such other relief as this Court finds just and equitable.

**Plaintiffs demand trial by jury.**

Michelle Riley and Antwan Belcher,

By: /s/ Torreya L. Hamilton
      One of Plaintiffs' Attorneys

HAMILTON LAW OFFICE, LLC
11 South LaSalle St., Suite 1000
Chicago, IL 60603
312.726.3173
Atty. No.: 6229397